IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | Criminal No. 18-184 |
| ) | |
| MARK HAMMOND, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# **OPINION**

Pending before the court is an emergency motion filed by counsel for Mark Hammond ("Hammond") for immediate release from the sentence of imprisonment he is currently serving at the Allegheny County Jail ("ACJ") (ECF No. 91). Hammond seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), due to his susceptibility to the COVID-19 virus. The government filed an expedited response opposing the motion (ECF No. 94). Hammond filed medical records under seal (ECF No. 97). The government filed a supplemental response and Hammond filed a reply (ECF Nos. 101, 102).

Hammond presents a unique procedural circumstance. He is a federal prisoner, serving a sentence imposed by this court on December 10, 2019, but he remains in the ACJ.[1] In *United States v. Raia*, No. 20-1033, 954 F.3d 594 (3d Cir., Apr. 2, 2020), the court of appeals held that district courts cannot consider requests for compassionate release under the First Step Act until a

---

[1] The court requested an explanation. Essentially, after Hammond was sentenced, he was returned to state custody because there were state detainers on him. Those state detainers were lifted by January 24, 2020, but that information was not communicated to the United States Marshal until April 1, 2020, when he returned to federal custody. Hammond is designated to serve the remainder of his sentence at FCI-Hazelton, but transfers of prisoners are on hold due to the Covid-19 pandemic. (ECF Nos. 99, 100).

1

prisoner has exhausted his administrative remedies, including allowing 30 days for the Bureau of Prisons ("BOP") to respond to a request for release. Because Hammond is not in the BOP's physical custody, the BOP's administrative remedies are not available to him. The government concedes that Hammond's motion is ripe for decision on the merits by the court, ECF No. 94 at 17, and agrees that the court has authority to modify the terms of Hammond's sentence to home confinement (ECF No. 94 at 3). The government opposes his release.

The court held telephonic status conferences on April 30 and May 1, 2020. The primary concern of the court was whether Hammond had been deprived of reentry programming that would have been available if he had been in BOP custody. As reported by the government after discussion with the BOP, the "BOP cannot consider compassionate release or home confinement eligibility for inmates not yet in [its] custody." (ECF No. 103). Based on Hammond's underlying conviction for a crime of violence (bank robbery),[2] criminal history category of VI and prior violations of supervised release, however, it is unlikely that the BOP would have granted compassionate release or deemed him eligible for home confinement. *Id*.

Factual Background

Hammond has served 27 months of the 36-month term of imprisonment imposed by the court, which represented a substantial downward variance from the applicable advisory guideline range. With good time credits, he has approximately 4 months remaining in custody. On March 26, 2020, Attorney General William Barr issued a memorandum to the Director of the BOP directing that inmates vulnerable to COVID-19 be given due consideration to be transferred to

---

[2] *United States v. Wilson*, 880 F.3d 80, 88 (3d Cir.), cert. denied, 138 S. Ct. 2586 (2018) (conviction for bank robbery by intimidation under § 2113(a) categorically qualifies as a crime of violence).

home confinement. (ECF No. 91-2). Hammond has a residence in Pittsburgh, Pennsylvania, with his wife and child, which he maintains is a suitable place for him to serve out the remainder of his sentence or begin supervised release. Hammond argues that he does not pose a danger to the community if released.

Hammond contends that he is particularly susceptible to COVID-19 based on the risk factors of age (56) and high blood pressure, as described in the presentence investigation report ("PIR") (ECF No. 64), which was prepared in September 2019. Paragraph 73 of the PIR states, in relevant part: "The defendant reports that he was diagnosed with high blood pressure in the early 2000's. He is prescribed Amlodipine for this condition." (ECF No. 64 at 21). On April 23, 2020, Hammond filed a motion to submit medical records under seal, which the court granted. Due to the expedited nature of the motion, defense counsel also emailed the records and a summary overview to the court and the government. The records are from 2018 through April 20, 2020.

The records reflect that Hammond was diagnosed with, among other things, hypertension and high blood pressure. A physical assessment on December 19, 2019, determined that his cardiovascular system and respiratory system were normal. R. 223. An ECG reading on January 10, 2020, noted possible left atrial enlargement and borderline left axis deviation. R. 25-26. A note from March 9, 2020, states: "[blood pressure] not controlled. He was not yet given his medication today and is on 3 bp medications. He is compliant with taking medicines. Denies headache, dizziness, chest pain or shortness of breath." R. 143. A note on March 16, 2020, reflects follow-up blood pressure checks and that the staff would consider a beta blocker if his blood pressure and heart rate are not controlled. R. at 76.

The government reported, with input from the Chief Deputy Warden of Healthcare

3

Services at ACJ on April 29, 2020, that Hammond is presently on one blood pressure medication, his blood pressure is checked three times per week and it is "completely stabilized." (ECF No. 101 ¶ 10).  The government acknowledged that Hammond had one high reading but maintains that Hammond is receiving proper medical care and his medical condition never constituted an emergency. *Id.*  In sum, the government contends that Hammond's stabilized high blood pressure does not pose an enhanced risk for Covid-19.

The government maintains that Hammond poses a serious danger to the community, if released, which outweighs any incremental risk of contracting COVID-19 he faces if he remains detained at ACJ.  In the PIR, Hammond was classified as a career offender and was in Criminal History category VI, in any event, based on his lengthy criminal record.  He violated conditions of supervision on six previous occasions. (PIR, ECF No. 64).

In his reply, Hammond's counsel reports that several inmates at ACJ, including one who had been in the cell next to Hammond, were recently quarantined due to Covid-19 symptoms (ECF No. 102 ¶ 2).  In opposing the motion, the government acknowledged that 4 inmates at ACJ, as of April 20, 2020, had been diagnosed with COVID-19.  The court takes judicial notice that as of May 3, 2020, the ACJ reported that 27 inmates and 4 staff members tested positive for Covid-19.  https://www.alleghenycounty.us/jail/index.aspx (last visited May 4, 2020).

Hammond reiterates that his age (56) is a risk factor, based on statistics from New York City as of April 14, 2020 (ECF No. 102 at 2) (23.1% of deaths were ages 45-64).  The court takes judicial notice of more recent local statistics reflecting that Covid-19 appears to be correlated with advanced age. Allegheny County reports that as of May 3, 2020, 82% of deaths from Covid-19 (84 people) were over age 70; 13% (13 people) were ages 60-69; and 3% (3 people) were ages 50-59.  https://www.alleghenycounty.us/Health-

Department/Resources/COVID-19/COVID-19.aspx (last visited May 4, 2020).  Allegheny County reports that 19% of positive cases and 13% of hospitalizations involved people ages 50-59.  *Id.*

Legal Analysis

Hammond argues that because he has completed 90% of his sentence and an inmate in the cell next to his was taken away and quarantined for the Covid-19 virus, his personal risk from the virus outweighs society's interest in his continued detention.  The government argues that the danger to the community from his release warrants continued detention.  Hammond faces a difficult burden.  The court must first consider the § 3553(a) sentencing factors and Hammond must demonstrate that "extraordinary and compelling reasons" exist.  U.S.S.G. §1B1.13.

The parties agree that Congress delegated to the United States Sentencing Commission (the "Commission") the responsibility for defining the term "extraordinary and compelling reasons."  *See* 28 U.S.C. §994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[] . . 3582(c) of title 18").

The Commission promulgated its policy statement[3] at U.S.S.G. §1B1.13, providing that a court, after considering the § 3553(a) factors, may reduce a term of imprisonment if it determines that--

---

[3] The court notes that the Sentencing Guidelines have not been updated to reflect the First Step Act, which provides that incarcerated defendants may file motions for compassionate release for disposition by the court. Pub. L. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.  Previously, such motions could be filed only by the Director of the BOP.  U.S.S.G. § 1B1.13.

(1)   (A) Extraordinary and compelling reasons warrant the reduction; or
(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

The court acknowledges that Congress gave it authority to modify a sentence to home confinement based on a defendant's motion for compassionate release. Pursuant to § 1B1.13, the court must first consider the § 3553(a) factors before reducing Hammond's sentence. U.S.S.G. §1B1.13. Upon review of those factors, as articulated at length at the sentencing hearing in December 2019, the court concludes that a sentence reduction is not appropriate. As noted above, the 36-month term of imprisonment Hammond is now serving represents a substantial downward variance from the applicable advisory guideline range. In imposing sentence, the court noted his extensive criminal history and drug abuse history and the need to protect the public from further crimes by him. The court determined that 36 months in prison was sufficient, but no greater than necessary, to satisfy the statutory sentencing purposes. The only new circumstances cited in Hammond's motion (the length of time he has served and his concerns about the Covid-19 pandemic) do not justify a further reduction in his sentence.

Second, even if the § 3553(a) sentencing factors favored release, Hammond would need to demonstrate "extraordinary and compelling" reasons for compassionate release. The Commission provided its definition of the term "extraordinary and compelling reasons" in U.S.S.G. §1B1.13, Application Note 1, which provides, in its entirety:

1. **Extraordinary and Compelling Reasons**.--Provided the defendant meets the requirements of subdivision (2) [*i.e., danger to the community*], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant**.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is--

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances**.--

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons**.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Application Note 2 explains that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of

imprisonment."[4]  Application Note 3 provides that rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason to reduce a sentence.

Hammond did not demonstrate "extraordinary and compelling reasons" for release, as defined in the Sentencing Guidelines.  He does not have a terminal illness.  He does not have a medical condition that substantially diminishes his ability to provide self-care within a correctional environment.  At age 56, he does not qualify under the age provisions.  He did not argue that his family circumstances warrant a sentence reduction.

The catchall "other reasons" in subsection (D) do not justify Hammond's release because he expresses only a generalized fear of contracting COVID-19.[5]  Hammond did not demonstrate an "extraordinary and compelling" susceptibility or risk of contracting COVID-19.  In *Raia*, the court of appeals cautioned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." 954 F.3d at 597.  It appears that ACJ is actively monitoring and testing inmates and removing and quarantining those who show symptoms of Covid-19.  Hammond did not convince the court that his high blood pressure, which is being monitored and stabilized by medication,

---

[4] Of course, the COVID-19 pandemic was unforeseen when Hammond was sentenced.

[5] There is a dispute about whether a court may independently decide whether extraordinary and compelling reasons exist under the First Step Act or whether Congress delegated sole authority to determine additional reasons for compassionate release to BOP, not the courts. *Compare United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020), *with United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019), *appeal dismissed*, No. 19-13239-F, 2019 WL 6273393 (11th Cir. Oct. 8, 2019). The court need not resolve this dispute because Hammond is not entitled to release under either approach.  *See* extended analysis in *United States v. Cook*, No. CR 17-20, 2020 WL 1974924, at *6 (W.D. Pa. Apr. 24, 2020) (court "need not decide whether it is bound by the commentary to § 1B1.13 or it has independent discretion to determine whether other 'extraordinary and compelling' reasons exist").

makes him particularly vulnerable.  Hammond did not demonstrate that he has a serious heart condition, such as pulmonary hypertension, that would place him at enhanced risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. A December 2019 evaluation showed that Hammond's cardiovascular system and respiratory system were normal.  R. 223.  In sum, his susceptibility to COVID-19 is not extraordinary and compelling.

      The court recognizes the potential for Hammond's exposure to the COVID-19 virus at the ACJ.  Unfortunately, that potential exists anywhere in the community.  As explained in detail by the government in its response, the ACJ, along with this court and other local authorities, is taking the necessary steps and precautions to help stop the spread of the COVID-19 virus amongst the population of Allegheny County, including those individuals detained in the ACJ. Additionally, there is no indication that Hammond's medical needs are not being addressed at the ACJ; in fact, he is being regularly tested and receiving his high blood pressure medication.  The court is sympathetic to his age, health, concerns about complications caused by COVID-19 and possible exposure to affected individuals.  Speculation concerning possible future conditions, however, does not constitute a "compelling reason" for release.  In other words, his current arguments for release do not outweigh the factors considered by the court in imposing his original sentence.

Conclusion

In accordance with the foregoing, Hammond's motion for compassionate release (ECF No. 91) will be DENIED.

An appropriate order will be entered.

Dated:  May 5, 2020.

                                    /s/ Joy Flowers Conti
                                  Joy Flowers Conti
                                  Senior United States District Judge